RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0101p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ALAN C. CARTWRIGHT,

　　　　　　　　　*Plaintiff-Appellant,*

　　*v.*

ALAN L. GARNER, et al.,

　　　　　　　　　*Defendant-Appellee.*

No. 12-6314

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:12-cv-01025—Jon Phipps McCalla, District Judge.

Argued: July 25, 2013

Decided and Filed: May 16, 2014

Before: BOGGS and SILER, Circuit Judges; DOWD, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Justin E. Mitchell, THOMASON, HENDRIX, HARVEY, JOHNSON & MITCHELL, Memphis, Tennessee, for Appellant. David Wade, MARTIN, TATE, MORROW & MARSTON, P.C., Memphis, Tennessee, for Appellees. **ON BRIEF:** Justin E. Mitchell, Jerry E. Mitchell, THOMASON, HENDRIX, HARVEY, JOHNSON & MITCHELL, Memphis, Tennessee, for Appellant. David Wade, Andrew Gardella, MARTIN, TATE, MORROW & MARSTON, P.C., Memphis, Tennessee, for Appellees.

---

[*]The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

_____

**OPINION**

_____

DOWD, District Judge.  The parties in this case have been engaged for years in multiple lawsuits in multiple jurisdictions concerning trusts that were established by James Cartwright before his death.  An understanding of both the background facts and litigation history is useful to understanding the issues presently before the court on appeal.

## I. BACKGROUND

A.      The Parties

Plaintiff-appellant Alan C. Cartwright ("Alan Cartwright") is the adopted son of James Cartwright and Betty Goff Cartwright.  Alan Cartwright is the beneficiary of several trusts established by his adoptive parents, and issues surrounding those trusts are the subject of this litigation.

Alan Cartwright's sister, defendant-appellee Alice Cartwright Garner, is also adopted and also the beneficiary of several trusts established by James Cartwright and Betty Goff Cartwright.  Defendant-appellee Alan Garner is Alice Cartwright Garner's husband.

Several legal entities are also defendants-appellees in this case.  The role of these parties is better understood in the context of the trusts at issue in this case, which is explained below.  The trusts themselves are not parties to this action.

B.      The Trusts

Plaintiff-appellant's father, James Cartwright, was an attorney, entrepreneur, and investor who established a number of trusts for the benefit of his two children, Alan Cartwright and Alice Cartwright Garner.  All of the trusts in which plaintiff has a beneficial interest are Tennessee trusts governed by the laws of the State of Tennessee.

According to the complaint Alan Cartwright filed in the district court below, "Alan C. Cartwright did not possess the same powerful intellect of his adoptive father" and he graduated from boarding school "without distinction or a substantial education."  James Cartwright sought

to ensure that his son, Alan Cartwright, would be provided with lifetime support and income through a trust mechanism limiting Alan Cartwright's access to funds outside of trust protection.

Towards this end, Alan Cartwright as settlor, and his father as trustee, entered into the Alan Cook Cartwright (ACC) Grantor Trust agreement. The language of the ACC Grantor Trust reflects Alan Cartwright's parents' desire to limit his access to funds that were not protected by a trust. Specifically, the ACC Grantor Trust states that Alan Cartwright "is not experienced in financial matters" and that the trust needs "to provide for his personal financial security by preserving his property against his own spend thrift actions."

The ACC Grantor Trust was amended several times during the lifetime of the ACC Grantor Trust trustee, James Cartwright. After James Cartwright's death, the ACC Grantor Trust was further amended by Alan Cartwright, as settlor, and Betty Goff Cartwright, as trustee. Alice Cartwright Garner is the sole trustee of the ACC Grantor Trust since the death of Betty Goff Cartwright in 2005; however, in this case she has not been sued by her brother in her capacity as a trustee.

Alan Cartwright is the life beneficiary of the ACC Grantor Trust. He is also the beneficiary of several trusts established by his father known as "Crummey Trusts."[1] The ACC Grantor Trust and the Crummey Trusts provide for distributions of a certain percentage of trust income each year to Alan Cartwright.

Alan Cartwright and his sister Alice Cartwright Garner are also the beneficiaries of two trusts created from the after-tax residue of the James B. Cartwright Marital Trust No. 1 and No. 2.[2] These trusts also provide for periodic distributions to the beneficiaries. The various trusts of which plaintiff is a beneficiary relevant to this action will be collectively referred to as "the trusts."

---

[1]The name "Crummey Trust" is derived from a tax case which recognized the validity of a certain trust structure.

[2]The James B. Cartwright (JBC) Revocable Trust provided for the creation of Marital Trust No. 1 and Marital Trust No. 2, to which Alan Cartwright and Alice Cartwright Garner are residual beneficiaries. In an amendment to the JBC trust, James Cartwright proclaimed at paragraph 9 that "No person shall have the power to remove my daughter, Alice Cartwright Garner, as Trustee of any trust created herein" and that "My son, Alan Cook Cartwright, shall have no power to participate, whether for himself or as the lawful guardian of any beneficiary, in any determination to remove any Trustee of any trust created herein."

As part of their estate planning, the Cartwright family established family limited partnerships. The trusts are limited partners of defendant Jackson Capital Partners, LP ("JCP"). Plaintiff does not dispute that the trust documents permit the trustees to invest trust assets in family limited partnerships.

Defendants Alan Garner and Alice Cartwright Garner are also limited partners of JCP, as well as the only partners of defendant Jackson Capital Management, LLC ("JCM"), which is the general partner of JCP. Alan Cartwright is not a limited partner of JCP. Plaintiff claims that defendants Alice Cartwright Garner and Alan Garner are the exclusive owners of defendant FSTW, LLC, to which plaintiff Alan Cartwright alleges assets from the trusts have been wrongfully diverted.

C.     The Tennessee state court actions

Several years of litigation involving the Cartwright trusts preceded the federal-court action now before us. In order to analyze the issues on appeal, it is necessary to review the Tennessee state court actions and rulings rendered before Alan Cartwright filed his federal case.

1.     Shelby County Chancery Court action

The state court litigation over the various Cartwright trusts began in June 2004 with a lawsuit filed by Betty Goff Cartwright (Alan Cartwright's mother) in the Shelby County Chancery Court in Tennessee against Alan Cartwright, Alice Cartwright Garner, Alan Garner, and others. Betty Goff Cartwright's complaint challenged the family tax-planning structure put in place by her and her husband, James Cartwright, before his death. Betty Goff Cartwright was 84 at the time. She died in 2005, and the defendants settled her estate's claims.

In December 2004, before Betty Goff Cartwright died and her claims were settled, Alan Cartwright filed a cross-claim in the Shelby County Chancery Court action against JCM, JCP, Alice Cartwright Garner, and Alan Garner. In his cross-claim, Alan Cartwright sought to have the trustees of the trusts of which he is a life beneficiary replaced and the family's limited partnership dissolved. Alan Cartwright continued to pursue his cross-claim after Betty Goff Cartwright's claims were settled and dismissed.

2.       Shelby County Circuit Court action

Later in October 2007, Alan Cartwright filed a new, separate action in the Shelby County Circuit Court sounding in tort against all of the defendants in the Chancery Court action. In the Circuit Court lawsuit, Alan Cartwright alleged that the defendants conspired to convert plaintiff's trust funds to their own benefit, wrongfully deprive him of his property, and use defendant JCP as a vehicle to convert plaintiff's trust funds for defendants' own benefit. The Shelby County Circuit Court transferred the Circuit Court action to the Chancery Court, finding that the Chancery Court action was a related action.

3.       Shelby County Chancery Court action after transfer of Circuit Court action

Alan Cartwright's Tennessee Circuit Court case was transferred to the Chancery Court, whose judge could hear the case by designation as a Circuit Court judge. However, the Chancery Court, finding that the Chancery Court and Circuit Court cases "both [arose] out of the same subject matter, that is, claims of breach of fiduciary duties in the context of administration of certain trust obligations created by written trust instrument and involve the same parties,"[3] dismissed the transferred Circuit Court action without prejudice and allowed Alan Cartwright to amend his cross-claim in the pending Chancery Court action to include his tort allegations from the Circuit Court action.

With leave of court, Alan Cartwright amended his cross-complaint in the Chancery Court to include the tort claims from his Circuit Court case. Discovery battles ensued. The Chancery Court ultimately bifurcated Alan Cartwright's inadequate distribution and breach of fiduciary duty claims from his tort claims of conspiracy, self dealing, and manipulation of trust fund assets to his detriment.

Alan Cartwright then filed two motions for partial summary judgment in the Chancery Court. Cross-defendants also moved for summary judgment, arguing that the trustees had complied with the trust documents and that Alan Cartwright had received all of the distributions

---

[3]Chancery Court dismissal order, found in the district court record in document 19-2, Page ID # 128-29.

required by the trust documents, and therefore the trustees could not be in violation of their fiduciary duties.

The Chancery Court denied Alan Cartwright's motions and granted the cross-defendants' motion for summary judgment. After the Chancery Court ruled, Alan Cartwright voluntarily dismissed without prejudice the tort claims in his amended cross-claim, "which included all of the tort allegations first raised in the 2007 Circuit Court complaint and which are now included as part of the Complaint in this [case],"[4] and appealed the Chancery Court's summary-judgment ruling in favor of cross-defendants.

D.      District Court Action

While Alan Cartwright's appeal of the Chancery Court's decision was pending, he filed the action in the United States District Court for the Western District of Tennessee that is now before this panel on appeal. As described by plaintiff-appellant in his appellate brief, "[t]his [federal] lawsuit deals specifically with the allegations that were [voluntarily dismissed] from the Chancery Court in 2011" with the addition of a new defendant, FSTW, LLC.[5]

1.      The Complaint

In his district court complaint, plaintiff Alan Cartwright alleges various tort claims against the defendants, including conversion, misrepresentation, mismanagement, and conspiracy with respect to trust assets and his distributions therefrom. At the core of plaintiff's claims of conversion and mismanagement is the investment of his trust assets in the family limited partnership Cartwright-Garner Investment, subsequently restructured as defendant JCP. The trusts are limited partners in the defendant JCP, as are Alice Cartwright Garner and Alan Garner. According to plaintiff's complaint, investment of the trust assets in JCP diminished both the value of those assets and his distributions from the trusts.

Alice Cartwright Garner and Alan Garner are trustees and/or co-trustees of the trusts at issue in this case. However, plaintiff's federal claims against Alice Cartwright Garner and Alan

---

[4]*See* Appellant's brief, Document 006111590272, p. 13, par. 11.

[5]*See* Appellant's brief, Document 006111590272, p. 16, par. 6.

Garner are made against them in their capacity as partners of defendant JCP, and as owners of defendant JCM and defendant FSTW, to which plaintiff alleges trust assets have been diverted. The trusts and trustees are not named as defendants in this case. Plaintiff claims that the assets of the trusts have been manipulated, mismanaged, and wrongfully diverted by the defendant partnerships and limited partners.

2.      Defendants' motion to dismiss district court action

Defendants moved to dismiss plaintiff's district court-action on multiple grounds. Relevant to this appeal is defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction on the basis that the Tennessee state court first exercised jurisdiction over the property at issue before the district court, and because both the district court action and the Tennessee state court proceedings are quasi in rem. Alternatively, defendants moved to dismiss for lack of diversity, failure to join necessary and indispensable parties, and under the doctrine of abstention.

3.      District Judge McCalla grants defendants' motion to dismiss for lack of subject matter jurisdiction

At the time defendants moved to dismiss for lack of subject matter jurisdiction, the Tennessee Court of Appeals had not yet ruled on plaintiff Alan Cartwright's appeal of the Chancery Court's decision in favor of defendants. After defendants' motion was fully briefed, District Judge McCalla conducted a telephonic hearing.

By the time of the telephonic hearing, the Court of Appeals of Tennessee had ruled on Alan Cartwright's appeal of the Chancery Court's grant of defendants' motion for summary judgment. In ruling on the appeal, the Tennessee Court of Appeals affirmed in part, reversed in part, and remanded to the Chancery Court for further proceedings on Alan Cartwright's claim that Alice Garner exerted undue influence over him when he signed several amendments to the ACC Grantor Trust, which Alan Cartwright claims reduce the distribution that he receives from the trusts. At the time District Judge McCalla ruled on defendants' motion to dismiss, Alan Cartwright's claim of undue influence was pending on remand before the Shelby County Chancery Court.

District Judge McCalla granted defendants' motion to dismiss for lack of subject matter jurisdiction on the basis of the "well established" rule articulated by the *Princess Lida* doctrine that in actions that are in rem or quasi in rem, if a state court first asserts jurisdiction over the property at issue in a claim subsequently filed in federal court, the state court may maintain and exercise its jurisdiction over that property to the exclusion of the federal court. *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939); *Jacobs v. DeShelter,* 465 F.2d 840, 842-43 (6th Cir. 1972) (quoting *Princess Lida*, 305 U.S. at 466); *Gillis v. Keystone Mut. Cas. Co.,* 172 F.2d 826, 829 (6th Cir. 1949) (characterizing the doctrine as "well established").

District Judge McCalla found that both state and federal court actions allege claims involving administration of the trusts and are quasi in rem. Further, the district court found that the Chancery Court's jurisdiction over the Shelby County action was asserted pursuant to Tennessee state law, Tenn. Code § 35-15-203, and that the Chancery Court first asserted jurisdiction over the property at issue in both the state and federal actions. As a consequence, District Judge McCalla concluded that he lacked subject matter jurisdiction over plaintiff's claims and that there was no need to address defendants' alternative arguments for dismissal.

## II. THE APPEAL

Plaintiff appeals District Judge McCalla's ruling granting defendants' motion to dismiss for lack of subject matter jurisdiction.

Plaintiff states the issue on appeal as follows:

> Whether the District Court erred in its determination that the Shelby County, Tennessee Chancery Court established exclusive jurisdiction over the *res* of this matter as demonstrated by the procedural posture of an action, now on remand from the Tennessee Court of Appeals, filed by Appellant's mother Betty Goff C. Cartwright in Chancery Court in 2004 and joined thereafter by Appellant Alan C. Cartwright.

Appellant acknowledges that he first brought his tort claims concerning partnership administration and malfeasance in the Circuit Court of Tennessee in 2007, but argues that he voluntarily dismissed those claims and contends that the Chancery Court never had exclusive jurisdiction over those claims. At most, plaintiff maintains, when the Circuit Court transferred

his tort claims to the Chancery Court, the Chancery Court had concurrent, but not exclusive, jurisdiction over the tort claims.[6]

Appellant does not disagree with the application of the *Princess Lida* doctrine in cases where the court that first asserted jurisdiction needs control of the property to resolve the case properly, and agrees with the district court's conclusion that the Chancery Court should retain jurisdiction over actions against the trusts involved in the state court litigation. However, appellant contends that the *Princess Lida* doctrine does not apply to this federal case because his claims do not involve trust administration, are not directed against the trusts in the Chancery Court action, and are not directed against the Garners in their capacity as trustees, but rather as individuals, partners, and owners of defendant partnerships and corporations. Consequently, it is plaintiff's position that his federal tort action is in personam, and not in rem or quasi in rem.[7]

Defendants state the issues on appeal as follows:

1.     Whether the District Court erred in dismissing the District Court Trust Complaint for lack of subject matter jurisdiction under the *Princess Lida* doctrine.

2.     Whether the Court, in the exercise of its sound discretion, should affirm the dismissal of the District Court Trust Complaint on any of the other bases asserted by the Trust Defendants in their Motion to Dismiss, but which the District Court did not address in its Order Granting Defendants' Motion to Dismiss.

Defendants advance two arguments in support of their position that the district court correctly applied the *Princess Lida* doctrine in this case. First, defendants contend that, because plaintiff did not object below to defendants' characterization of the federal complaint as a quasi in rem action, plaintiff failed to preserve this issue on appeal and cannot now argue that the

---

[6]Appellant's brief omits some of the details of the transfer and voluntary dismissal of his tort claims. After plaintiff's Tennessee Circuit court case was transferred to the Chancery Court, the Chancery Court dismissed the Tennessee Circuit court case and granted plaintiff leave to amend his Chancery Court action to include the tort claims made in the Tennessee Circuit Court, which he did. After the Chancery Court ruled against plaintiff and in favor of defendants on some of plaintiff's claims, Alan Cartwright then voluntarily dismissed his tort claims that were pending in the Chancery Court action.

[7]The district court noted in its opinion dismissing plaintiff's case for lack of subject matter jurisdiction that "Plaintiff offered no objection to Defendants' characterization of the claims before the Chancery Court and this Court as quasi in rem." Case No. 2:12 CV 1025, Western District of Tennessee, Document 32, Page ID # 701.

federal action is in personam. Second, plaintiff's federal action affects the same property (trust funds) that was under the control of the Tennessee Chancery Court before plaintiff's federal case was filed, thus depriving the district court of jurisdiction.

### III.  APPLICABLE LAW

A.      Rule 12(b)(1) and Standard of Review

On appeal, plaintiff challenges the district court's application of the *Princess Lida* doctrine as the basis for Rule 12(b)(1) dismissal of his federal case for lack of subject matter jurisdiction. The *Princess Lida* doctrine provides that in actions that are in rem or quasi in rem, if a state court first assumes jurisdiction over the property at issue in a claim subsequently filed in federal court, the state court maintains its jurisdiction over the property to the exclusion of the federal court, thereby depriving the federal court of subject matter jurisdiction.

Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack). *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis. *Id*.

A factual attack challenges the factual existence of subject matter jurisdiction. In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. *Id.* Plaintiff bears the burden of establishing that subject matter jurisdiction exists. *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

We review *de novo* the district court's decision to dismiss this case for lack of subject matter jurisdiction under Rule 12(b)(1). But "[w]here the district court does not merely analyze the complaint on its face, but instead inquires into the factual predicates for jurisdiction, the decision on the Rule 12(b)(1) motion resolves a 'factual' challenge rather than a 'facial'

challenge . . . ." *Lovely v. United States*, 570 F.3d 778, 781-82 (6th Cir. 2009) (quoting *Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004)). Factual findings made by the district court are reviewed for clear error; however, the district court's application of the law to the facts is reviewed *de novo*. *Lovely*, 570 F.3d at 782 (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996)).

In this case, the district court's analysis in granting defendants' motion to dismiss went well beyond a consideration of the complaint on its face. Therefore, this panel reviews the district court's factual determinations for clear error, but reviews *de novo* the district court's application of the law to those factual determinations. However, we note that plaintiff's appeal does not really challenge the factual predicates of the district court decision, but focuses on the legal effect of those facts in the context of the Rule 12(b)(1) analysis.

B.      *Princess Lida* Doctrine

*Princess Lida* presented the question to the Supreme Court of the United States of "whether the exercise of jurisdiction by a state court over the administration of a trust deprives a federal court of jurisdiction of a later suit involving the same subject matter." *Princess Lida*, 305 U.S. at 457. In *Princess Lida*, Lida and her husband, Gerald, divorced. They reached an agreement by which Gerald would pay certain sums of money annually to the trustees of a fund for the benefit of Lida and their children.

Gerald performed the agreement for a few years and then repudiated the agreement. One of the trustees, Lida, and her children brought an action in state court in Pennsylvania seeking performance of the agreement by Gerald. The state court issued a decree ordering Gerald to pay as agreed and retained jurisdiction to enforce the continued performance of the agreement. Later, the trustees sought a modification of the decree, which was approved. About a decade later, the trustees acknowledged receipt of all sums due under the modified decree. In connection with the satisfaction of the decree, an accounting, and exceptions thereto, were presented in the state court action.

While these state court proceedings were underway, Lida and one of her children filed an action in the United States District Court for the Western District of Pennsylvania against the

trustees, alleging mismanagement of the trust funds and seeking the removal of the trustees and an accounting. The trustees moved to dismiss the federal action on the basis that the state court had exclusive jurisdiction over the controversy. Ultimately, both the federal and state courts claimed jurisdiction and enjoined the parties from proceeding in the other forum. In view of the "unusual state of affairs" and "the importance of the question involved," the United States Supreme Court granted the writ of certiorari.

After an analysis of the state court proceedings, the United States Supreme Court concluded that the state court in Pennsylvania properly had jurisdiction over the administration of the trust funds at issue, which included the various matters to be addressed in connection with the accounting filed in state court immediately preceding Lida's filing of the federal action. With respect to the district court action, the Supreme Court observed that if both the state and federal courts proceeded with their actions, "they would be required to cover the same ground." *Id.* at 465.

However, the Supreme Court noted that this determination alone is not conclusive with respect to the issue of the district court's jurisdiction because "it is well settled that where the judgment sought is strictly in personam, both the state court and federal court, having concurrent jurisdiction, may proceed . . . at least until judgment is obtained in one of them which may be set up as res judicata in the other." *Id.* at 466. If the suits in federal and state court are in rem or quasi in rem, however, it is a different matter. In such cases, the court must have some control over the property that is the subject of the litigation in order to grant relief, and "the jurisdiction of one court must yield to that of the other." *Id.* (citing *Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189 (1935)).

The principle that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction is applicable to both state and federal courts, and is not limited to cases where the property has actually been seized, but includes suits brought to marshal assets, administer trusts, or liquidate estates where the court must control the property to give effect to its jurisdiction. *Id.* "The doctrine is necessary to the harmonious cooperation of federal and state

tribunals." *Id.* (citing *United States v. Bank of New York & Trust Co.*, 296 U.S. 463, 478 (1936)).[8]

The Supreme Court found that the Pennsylvania state court could not exercise its jurisdiction without some control over the trust funds, and that the proceedings in both state and federal court were quasi in rem. Accordingly, the Supreme Court concluded that the district court was without jurisdiction because the Pennsylvania court first exercised jurisdiction over the administration of the trust funds at issue. *Id.* at 467-68.

## IV. ANALYSIS

If two suits are in rem or quasi in rem, so that the court must have possession or some control over the property in order to grant the relief sought, the jurisdiction of one court must yield to that of the other. *Jacobs*, 465 F.2d at 842-43 (citing *Princess Lida*, 305 U.S. at 466; *Bank of New York & Trust Co.*, 296 U.S. at 477-78); *see also Ewald v. Citizens Fidelity Bank and Trust Co.,* 242 F.2d 319, 321-22 (6th Cir. 1957). This rule applies where the court first asserting jurisdiction needs some control over the property to resolve the case, such as in cases involving trust administration. *Princess Lida*, 305 U.S. at 466; *Jacobs*, 465 F.2d at 842 (quoting *Princess Lida*, 305 U.S. at 466).

A.     Both the federal and state actions are quasi in rem

The first question in determining whether the *Princess Lida* doctrine applies in this case to deprive the federal court of jurisdiction is whether the district court and Tennessee state court actions are quasi in rem. In the Shelby County Chancery Court action, Alan Cartwright claims that his sister, defendant Alice Cartwright Garner, exerted undue influence over him when he signed certain amendments to the ACC Grantor trust. These amendments, which plaintiff claims affect both the manner and amount of distributions made to him from the trusts, relate to trust administration. In suits involving trust administration, the court must control the property in order to give effect to the resolution of the case, and are quasi in rem. *Princess Lida*, 305 U.S. at 466-68.

---

[8]This principle is also known as the doctrine of prior exclusive jurisdiction. *See United States v. Sid-Mars Restaurant & Lounge, Inc.*, 644 F.3d 270, 274-75 (5th Cir. 2011).

While plaintiff does not dispute that the Chancery Court action is quasi in rem, he claims that this federal action is in personam because his claims relate to partnership administration and not trust administration, and to the personal tort malfeasance of the Garners. However, the allegations of plaintiff's district court complaint asserted in support of his tort claims for fraud, mismanagement, and conversion belie the conclusion that this federal action is anything but a quasi in rem action regarding trust administration.

As repeatedly stated in his complaint, plaintiff is the beneficiary of the trusts at issue in this case even though the trusts themselves are not parties. Plaintiff's tort claims begin with the placement of the trust assets into the Cartwright-Garner Investment Company, LP by Alan Cartwright's mother, Betty Goff Cartwright, who was the trustee at the time. The Cartwright-Garner Investment Company, LP, was restructured into defendant JCP, and plaintiff acknowledges in his complaint that these partnerships are family limited partnerships. Alan Cartwright apparently does not dispute that the trust documents specifically permit investment of the trust assets in family limited partnerships, as does Tennessee law. *See Cartwright v. Jackson Capital*, 2012 WL 1997803, at *2 n.3 (Tenn. Ct. App. June 5, 2012).

As a consequence of defendants' alleged tortious conduct, plaintiff claims that both the value of the trust assets, and his beneficial interest therein, have been diminished. Investment, management, and distribution of trust assets are matters of trust administration, not partnership administration. In addition to an accounting, plaintiff described in his complaint part of the remedy he seeks as follows: "Plaintiff Alan C. Cartwright individually and the trust funds of which he is a primary beneficiary are each entitled to recover an amount to be determined by a jury."[9]

Further, if plaintiff were successful in recovering trust assets that he claims were diminished as a consequence of defendants' conduct, the court would be required to exercise some control over the defendant partnerships and the trusts in order to effectuate that remedy. Accordingly, we hold that the district court correctly concluded that Alan Cartwright's federal action is quasi in rem.

---

[9]Plaintiff's complaint, par. 68.

B.   Tennessee Chancery Court first exercised jurisdiction over the property at issue pursuant to state law

At the time the district court issued its opinion, the allegation of undue influence by Alice Cartwright Garner with respect to two amendments to the ACC Grantor Trust signed by Alan Cartwright was pending before the Shelby County Chancery Court on remand.  Plaintiff claims that these amendments affect the distributions from the ACC Grantor Trust and other trusts to which Alan Cartwright is also a beneficiary.

The Chancery Court first acquired jurisdiction over Alan Cartwright's cross-claims of both undue influence and mismanagement, both of which concern trust administration, pursuant to Tennessee law.  Under Tennessee law:

> Chancery courts and other courts of record having probate jurisdiction:
>
> (1)To the exclusion of all other courts, have concurrent jurisdiction over proceedings in this state brought by a trustee or beneficiary concerning the administration of a trust.

Tenn. Code Ann. § 35-15-203(1).

In his Tennessee state court action before the Chancery Court, plaintiff claimed that he was deprived of trust assets due to mismanagement and manipulation, and that he was unduly influenced to sign certain amendments to the ACC Grantor Trust, all of which plaintiff alleged reduced the assets of and distributions from the trusts.  Alan Cartwright subsequently voluntarily dismissed his tort claims before the Chancery Court, but Alan Cartwright's claim of undue influence was pending before the Chancery Court on remand from the Tennessee Court of Appeals when the district court ruled on defendants' motion to dismiss.

The ACC Grantor Trust and other trusts now under the jurisdiction of the Chancery Court are limited partners of defendant JCP in the instant case, and are the same trusts that plaintiff-appellant alleged before the Chancery Court, and now alleges in this federal action, were mismanaged, manipulated, and wrongfully diverted by the defendants.  Both the district court action and the Chancery Court action involve issues of trust administration, and control over the trust assets would be required by the Chancery Court in order to provide relief.  Jurisdiction over

those assets was first exercised by the Shelby County Chancery Court in Tennessee. Because the Tennessee Chancery Court first exercised jurisdiction over the trusts and their administration in these quasi in rem actions, the district court lacks subject matter jurisdiction over plaintiff's claims.

For these reasons, the judgment of the district court dismissing plaintiff-appellant's case for lack of subject matter jurisdiction is AFFIRMED. Because we affirm the district court, it is not necessary to consider defendants' alternative arguments in support of their motion to dismiss.