FILED
09/19/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 27, 2017 Session

## ALAN C. CARTWRIGHT v. ALICE CARTWRIGHT GARNER ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-14-0401-3   James R. Newsom III, Chancellor**

—————————————————————

**No. W2016-01424-COA-R3-CV**

—————————————————————

A trust beneficiary sued co-trustees for breach of their fiduciary duties and for procuring the creation of two trusts through undue influence.  The trustees moved to dismiss for failure to state a claim upon which relief can be granted.  Following the hearing on the motion to dismiss, the trust beneficiary moved to amend his complaint.  Prior to ruling on the motion to amend, the trial court granted the motion to dismiss based on the expiration of the statute of limitations and the grounds of res judicata and collateral estoppel.  Subsequently, the trial court denied the motion to amend.  On appeal, the trust beneficiary asserts the trial court abused its discretion by not granting his post-hearing motion to amend.  The trust beneficiary also argues that the court erred in dismissing his complaint.  We conclude the court did not err in denying his motion to amend.  We further conclude that the trial court properly dismissed the complaint on the ground of res judicata.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Jerry E. Mitchell and Laura L. Deakins, Memphis, Tennessee, for the appellant, Alan C. Cartwright.

David Wade and Andrew Gardella, Memphis, Tennessee, for the appellees, Alice Cartwright Garner and Alan L. Garner.

## OPINION

### I.

#### A.

On March 14, 2014, in the Chancery Court for Shelby County, Tennessee, Alan C. Cartwright filed a complaint against his sister, Alice Cartwright Garner, and his brother-in-law, Alan L. Garner. The complaint accused the Garners of "multiple and serious breaches of fiduciary duty" in their capacity as trustees of several trusts of which Mr. Cartwright was a beneficiary. This was not the first time, nor would it be the last, that Mr. Cartwright would sue his sister and brother-in-law. *See Cartwright v. Garner*, 751 F.3d 752 (6th Cir. 2014); *Cartwright v. Garner*, No. W2016-01423-COA-R3-CV, 2018 WL 3814632 (Tenn. Ct. App. Aug. 10, 2018); *Cartwright v. Jackson Capital Partners, Ltd. P'ship*, 478 S.W.3d 596 (Tenn. Ct. App. 2015); *Cartwright v. Jackson Capital*, No. W2011-00570-COA-R3-CV, 2012 WL 1997803 (Tenn. Ct. App. June 5, 2012).

In *Cartwright v. Jackson Capital* (*Cartwright I*), we recounted the facts that provide context to the present appeal. 2012 WL 1997803, at *1. Mr. Cartwright and Ms. Garner are the adopted children of James and Betty Cartwright. *Id.* Prior to his death in 1994, James Cartwright "placed the wealth that he and his wife accumulated into numerous trusts for the benefit of his family members and others." *Id.* One such trust was the Alan Cook Cartwright Grantor Trust, also known as the ACC Grantor Trust. *Id.* at *3.

The ACC Grantor Trust "'provide[d] for [Alan Cartwright's] personal financial security by preserving his property against his own spend thrift actions,' as [Alan Cartwright] was 'not experienced in financial matters.'" *Id.* The trust agreement limited Alan Cartwright "to drawing 75% of the net income of the ACC Grantor Trust for his use or benefit." *Id.* The "[a]greement could only be amended or terminated upon written agreement of the trustee and [Alan Cartwright]." *Id.*

Following James Cartwright's death, Betty Cartwright succeeded him as trustee of the ACC Grantor Trust. In 1995 and 1996, Mrs. Cartwright and Alan Cartwright executed amendments to the ACC Grantor Trust that placed monetary caps on the net annual income of the trust distributable to Mr. Cartwright such that Mr. Cartwright would receive the lesser of the cap amount or 100% of the net annual income from the trust. *Id.* The amendments also added to the corpus of the ACC Grantor Trust future distributions from other trusts in which Mr. Cartwright was beneficiary. *Id.*

In *Cartwright v. Jackson Capital Partners, LP* (*Cartwright II*), we discussed the creation of two additional trusts, the Alan Cook Cartwright 1996–1 Irrevocable Trust and

the Alan Cook Cartwright 1996–2 Irrevocable Trust, in 1996. 478 S.W.3d at 608. According to Alan Cartwright, these trusts were created to benefit his sister and brother-in-law and their children and were made possible by another provision of one of the amendments to the ACC Grantor Trust. *Id.* The provision provided that Mr. Cartwright could request that the trustee "make additional distributions of principal from the [ACC Grantor Trust] to enable [Mr. Cartwright] to make gifts to the issue of his sister, ALICE CARTWRIGHT GARNER, in such amounts as he desires." *Id.*

On January 1, 2000, Mr. Cartwright's sister, Ms. Garner, became a co-trustee of the ACC Grantor Trust with her adoptive mother. *Cartwright I*, 2012 WL 1997803, at *4. According to Mr. Cartwright, Ms. Garner, unlike himself, "had been working closely with [their] father in the management of the Cartwright family business and had obtained intimate familiarity with and the [sic] working knowledge of all of the trusts." A few years later, the litigation began.

## B.

In 2004, following a remarriage, Betty Cartwright filed a complaint in the Chancery Court for Shelby County, Tennessee, against her children, son-in-law, eighteen trusts, and two business entities. *Id.* at *1. The complaint alleged, among other things, that Ms. Garner "had breached fiduciary duties, engaged in self-dealing, and created impermissible conflicts of interest" and sought her removal as trustee of trusts of which Mrs. Cartwright was a beneficiary. *Id.* The complaint also alleged that Ms. Garner "and her husband had breached their fiduciary duties as general partners of the family limited partnership, and it sought to have the family limited partnership dissolved." *Id.* Mr. Cartwright and the trusts were named as "Declaratory Defendants." *Id.*

Mr. Cartwright answered his mother's complaint and asserted a cross-claim against his sister and brother-in-law. His claims against his sister and brother-in-law mimicked those of his mother.

> "To the extent that the allegations in the Complaint are found to be true, they are equally applicable to Alan Cartwright, and therefore, they are adopted and incorporated herein by reference as completely and fully as if restated herein verbatim[.]" [Mr. Cartwright] alleged that he had also been deprived of assets as a trust beneficiary, and he sought removal of [Ms. Garner] as trustee, in addition to access to the trust corpus to the extent that the court deemed appropriate.

*Id.*

After Mrs. Cartwright's death in 2005, the court dismissed her claims. But Alan Cartwright's cross-claim remained. *Id.*

3

Presaging his approach to litigation, in 2007, Mr. Cartwright filed a separate complaint against essentially the same defendants named in his cross-complaint, but this time in the Circuit Court for Shelby County. The new complaint alleged "a conspiracy to convert [Mr. Cartwright's] trust funds to the defendants' own benefit, and a conspiracy to cause a breach of the fiduciary duties owed to him in order to deprive him of his property." *Id.*

Unsurprisingly, the defendants in the circuit court action moved to dismiss or, in the alternative, to transfer the case to chancery court. *Id.* at *2. Mr. Cartwright "opposed the motion to dismiss or transfer by emphasizing the differences in the subject matter of the two lawsuits." *Id.* at *2. He explained that "the chancery court suit sought equitable relief due to trust mismanagement," while the circuit court "sought damages [in tort] due to an alleged conspiracy to convert assets from a number of different trust properties." *Id.* Unconvinced, the circuit court transferred the case to chancery court. *Id.*

The chancery court dismissed the transferred case, but granted Mr. Cartwright leave to amend his cross-claim to include additional allegations. *Id.* Mr. Cartwright then amended his cross-claim "to allege conspiracy to commit the tort of conversion of his property, and to request $50 million in damages." *Id.*

The Garners and the other defendants moved for partial summary judgment on Mr. Cartwright's breach of fiduciary duty claim. *Id.* As grounds, Ms. Garner and her husband, who by this time was a co-trustee, asserted that the undisputed facts showed that they fully complied with the terms of the trust documents and that Mr. Cartwright received all the distributions to which he was entitled. *Id.* at *3. Mr. Cartwright opposed the motion by arguing, among others things, "that the trust documents were void . . . because he executed the documents due to undue influence." *Id.* at *15.

The chancery court granted partial summary judgment "on the issues surrounding the terms of the family limited partnership documents and the trust documents; whether [Mr. Cartwright] received the distributions to be made to him under the trust documents; and whether the defendants breached their fiduciary duties in conducting their responsibilities as trustees." *Id.* at *8. On the issue of the amendments to the ACC Grantor Trust, the court declined to give Mr. Cartwright's allegations of undue influence "weight" given the passage of time and the death of his parents. *Id.* Mr. Cartwright then voluntarily dismissed his remaining claims and sought an appeal.[1] *Id.*

---

[1] In addition to seeking an appeal, Mr. Cartwright also filed suit in the United States District Court for Western District of Tennessee against the Garners and others. *Cartwright v. Garner*, No. 2:12-CV-01025-JPM-dkv, 2012 WL 12871904, at *1 (W.D. Tenn. Sept. 28, 2012), *aff'd*, 751 F.3d 752 (6th Cir. 2014). In the federal case, Mr. Cartwright claimed that the Garners and other defendants had "manipulated and mismanaged assets" of several trusts, including the ACC Grantor Trust, "and wrongfully diverted some of those trust assets" to FSTW, LLC, a limited liability company allegedly

4

In *Cartwright I*, this Court "affirm[ed] the trial court's decision . . . on the issues surrounding the terms of the trust documents, and whether Alan [Cartwright] received the distributions to be made to him under the trust documents as written." *Id.* at *11. But because the caps under the amendments created the potential for "more money to remain in the corpus of the ACC Grantor Trust for potential future distribution to [Ms. Garner] as a contingent beneficiary," we could not exclude the possibility that Ms. Garner personally benefitted from the amendments. *Id.* at *13. Given that receipt of a benefit would raise a presumption that some improper advantage was taken, we concluded that "a genuine issue of fact exist[ed] regarding the ultimate issue of whether undue influence was used to accomplish" the execution of the two amendments to the ACC Grantor Trust. *Id.* at *13-14. Thus, we reversed on the undue influence question and remanded for further proceedings. *Id.* at *15.

Following the remand and after additional discovery, the Garners and the other defendants again moved for summary judgment. *Cartwright II*, 478 S.W.3d at 610. The defendants relied, in part, on a report prepared by N. Gordon Thompson, a certified public accountant, certified financial planner, and certified valuation analysist. *Id.* at 610-11. The Thompson report showed, among other things, that Mr. Cartwright received "$1,336,483 *more* in distributions between 1995 and 2011 than he would have received without the Amendments [to the ACC Grantor Trust]." *Id.* So the defendants argued that they "affirmatively negated essential elements of Alan [Cartwright's] claim by showing that Alice [Garner] did not receive a benefit from the execution of the Amendments, and Alan [Cartwright] suffered no damages." *Id.* at 611.

The remand court granted summary judgment to the defendants. *Id.* at 612. The court determined that there was no genuine issue of material fact and that Mr. Cartwright had not overcome the Thompson report's analysis of the impact of the amendments to the ACC Grantor Trust. *Id.* at 612-13. The court "concluded that the defendants successfully negated essential elements of [Mr. Cartwright's] claim by showing, through the Thompson report, that [Mr. Cartwright] 'received over a million dollars more than he would have received absent the signing of the amendments.'" *Id.* at 613.

It was on remand that the consequences of Mr. Cartwright's voluntary dismissal of his claims not covered by the court's original grant of summary judgment, the summary judgment reviewed in *Cartwright I*, became clear. It was also at this point that Mr. Cartwright perhaps began to regret his decision. Mr. Cartwright "sought to discover facts on remand regarding the creation and funding of two additional trusts—the Alan Cook Cartwright 1996–1 Irrevocable Trust and the Alan Cook Cartwright 1996–2 Irrevocable Trust." *Id.* at 608. Although discovery regarding the trusts was permitted, because of the limited scope of the remand, the court held that Mr. Cartwright "could not

owned by the Garners. *Id.* & n.2. The district court dismissed the case for lack of subject matter jurisdiction, which was affirmed on appeal. *Cartwright v. Garner*, 751 F.3d at 763.

secure any *relief* on remand related to the other trusts." *Id.* at 609. For the same reason, the court further held that "there [was] no need for inquiry into matters relating to the current value of assets held in trust." *Id.* at 610.

Mr. Cartwright moved "to 'amend and supplement' his original pleading, which was filed in 2004, in order to add 'supplemental causes of action' alleging, among other things, that the defendants used undue influence to obtain his signatures on the documents creating the 1996–1 and 1996–2 trusts." *Id.* But the remand court denied the motion, "finding the proposed amendment untimely, prejudicial, and futile in light of the narrow issues on remand, 'namely, whether undue influence accompanied the signing of the Amendments to the ACC Grantor Trust.'" *Id.* at 611.

Mr. Cartwright appealed the remand court's grant of summary judgment, which we affirmed in *Cartwright II*. *Id.* at 628. But he also filed two additional cases in Chancery Court for Shelby County against the Garners and other defendants. We considered one of those two cases in *Cartwright v. Garner* (*Cartwright III*), 2018 WL 3814632. In *Cartwright III*, Mr. Cartwright asserted what he characterized as tort claims against the Garners, claims he had voluntarily dismissed to pursue his appeal in *Cartwright I*. *See id.* at *1.

C.

The other case filed by Mr. Cartwright is the subject of this appeal. Like in *Cartwright III*, Mr. Cartwright again asserts claims previously raised, but rather than tort claims, the claims arise from alleged breaches of fiduciary duty by the Garners. The complaint states that Mr. Cartwright had intended such claims to have been tried in connection with his cross-claim. But because of the limited scope of the remand following *Cartwright I* and the denial of his motion to amend, the complaint purportedly serves "to protect [Mr. Cartwright's] rights in the event any part of his appeal is unsuccessful."

The Garners moved to dismiss the complaint based on the statute of limitations. Alternatively, they argued that dismissal was appropriate based on res judicata, collateral estoppel, equitable estoppel, and laches. They also sought an award of attorney's fees, costs, and expenses under Tennessee Code Annotated § 20-12-119, which permits such an award in the event of a dismissal for failure to state a claim upon which relief can be granted. *See* Tenn. Code Ann. § 20-12-119(c) (Supp. 2017).

Mr. Cartwright responded with a series of amendments to his complaint. He first filed a motion to amend proposing to add two counts to the complaint. Both counts related to the Thompson report, which was the expert report relied on by the Garners following the remand in *Cartwright I*. The court set the motion to amend to be heard on

October 30, 2015,[2] but the court continued the hearing to November 13, 2015, "due to the Tennessee Supreme Court's denial of [Mr. Cartwright's] application for permission to appeal [from *Cartwright II*]."

One day before the rescheduled hearing, Mr. Cartwright filed and served an amended and substituted revised motion to amend complaint.[3] In the cover letter hand delivered to the court, Mr. Cartwright's counsel "offer[ed] apologies . . . for making some changes to the proposed Amended Complaint submitted earlier, and if a continuance is appropriate, [he] would support that." Mr. Cartwright's counsel later explained that the amended and substituted revised motion to amend complaint was intended to replace the previous motion to amend complaint. The court took the matter under advisement.

The next month, Mr. Cartwright withdrew the amended and substituted revised motion to amend complaint "pursuant to the direct instructions from Alan C. Cartwright to counsel to withdraw same." Consequently, the court set the hearing date on the Garners' motion to dismiss for January 8, 2016.

The day before the hearing on the motion to dismiss, Mr. Cartwright filed an amendment to his complaint. "Plaintiff's Amendment to Complaint" was less an amendment and more a defense of the timing of Mr. Cartwright's complaint. The amendment explained that Mr. Cartwright's receipt of the Thompson report in the original litigation triggered the running of a new limitation period under the statute of limitations. But his claims were not just limited to the Thompson report, Mr. Cartwright also asserted that his "claims include the years 2012 and 2013, which were not a part of the Thompson Report." And he concluded the amendment with the following sentence: "This Amendment is brought to include the claim for 2014 also."

The amendment also included a specific claim that the "gifts" used to fund the Alan Cook Cartwright 1996–1 Irrevocable Trust and the Alan Cook Cartwright 1996–2 Irrevocable Trust were the product of undue influence. Presumably with reference to *Cartwright I* and *Cartwright II*, Mr. Cartwright complained that "[t]he issues of whether the 1996-1 and 1996-2 trust gifts to [the Garners] or the 'cap' and 'pour over' provisions

---

[2] The parties agree that a series of transitions in chancellors caused a delay in this case.

[3] Amending or seeking to amend his complaint just prior to a hearing seems to be a commonly employed strategy of Mr. Cartwright. *See, e.g.*, *Cartwright III*, 2018 WL 3814632, at *1 (noting that Mr. Cartwright's amendment to complaint was filed one day before the hearing on the defendants' motion to dismiss). According to the Garners, two days before the October 28, 2015, hearing on the motion to amend complaint, Mr. Cartwright served, but did not file, an amended motion to amend complaint. In a cover letter accompanying the motion, Mr. Cartwright explained that the late "modifications were stimulated by the recent denial of our petition to the Supreme Court on an earlier case" and that "there will certainly be no opposition from [Mr. Cartwright's] counsel" if the Garners desired more time.

were products of undue influence that caused economic harm to Alan Cartwright have never been decided."

The court held a two-day hearing on the Garners' motion to dismiss.[4]  On February 16, 2016, before the court ruled on the motion to dismiss, Mr. Cartwright filed another amended and substituted revised motion to amend complaint, which was substantially similar to the motion that had been withdrawn by Mr. Cartwright in November 2015.

On February 23, 2016, the court granted the Garners' motion to dismiss on the grounds that the complaint was time barred, res judicata, and collateral estoppel. Mr. Cartwright filed a motion to alter or amend, seeking "to further clarify the Court's legal basis for its findings and conclusions."  Mr. Cartwright also sought to have the order reflect whether the court considered the "Plaintiff's Amendment to Complaint" filed the day prior to hearing.

On April 26, 2016, even though the court had not yet ruled on the February 2016 motion to amend complaint, Mr. Cartwright filed another motion to amend complaint. Attached to the motion to amend was yet another proposed amended complaint, consisting of a copy of the amended complaint attached to the February 2016 motion with handwritten revisions, additions, and deletions.

The court denied Mr. Cartwright's motion to alter or amend and April 26 motion to amend complaint and certified the order as final under Rule 54.02 of the Tennessee Rules of Civil Procedure.[5]  The court found that the February 2016 motion included "a *verbatim* copy of the proposed amended complaint" that Mr. Cartwright attached to the motion to amend filed in November 2015 and later withdrew.  The court also explained that "it already considered the matters contained in the proposed amended complaint both through the written and oral argument on Defendants' Motion to Dismiss."  As a result, the court concluded that the April 2016 motion to amend complaint "should be denied on the grounds that the proposed amendment to the Complaint that Plaintiff attached to the April 26, 2016 Motion to Amend is futile."

---

[4] The parties also presented arguments on the motion to dismiss filed in *Cartwright III*. *Cartwright III*, 2018 WL 3814632, at *1 n.2.  According to Mr. Cartwright, the hearing lasted nine hours.

[5] The court withheld rulings on the Garners' request for attorney's fees under Tenn. Code Ann. § 20-12-119(c) and their motion for sanctions under Rule 11 of the Tennessee Rules of Civil Procedure.

# II.

## A. DENIAL OF THE MOTION TO AMEND

On appeal, Mr. Cartwright argues that the court erred in denying his motion to amend that was filed after the hearing on the Garners' motion to dismiss but before the court entered an order ruling on the motion to dismiss. Under Rule 15.01 of the Tennessee Rules of Civil Procedure, "[a] party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served." Tenn. R. Civ. P. 15.01. "Otherwise a party may amend [his] pleadings only by written consent of the adverse party or by leave of court, and leave shall be freely given when justice so requires." *Id.* The decision of "[w]hether to grant a Rule 15 Motion to Amend is within the sound discretion of the trial court." *Conley v. Life Care Centers of Am., Inc.*, 236 S.W.3d 713, 723 (Tenn. Ct. App. 2007). In exercising its discretion, the court may consider "lack of notice, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue delay in the filing of the motion, undue prejudice to the opposing party, and futility of the proposed amendment." *Id.* at 723-24 (citing *Hall v. Shelby Cty. Ret. Bd.*, 922 S.W.2d 543, 546 (Tenn. Ct. App. 1995)).

From the record, it appears that the trial court considered Mr. Cartwright's original complaint as amended by "Plaintiff's Amendment to Complaint," filed the day prior to the hearing on the motion to dismiss, as the operative complaint. Having amended "once as a matter of course," Mr. Cartwright was required to either seek leave of court or obtain the Garners' written consent to file another amendment. He argues that the trial court abused its discretion when it entered an order granting the motion to dismiss while his February 2016 motion to amend complaint was pending. In Mr. Cartwright's view, the court should have withheld its ruling on the motion to dismiss until it had ruled on his post-hearing motion to amend complaint.

Typically, a dismissal based on an original complaint while a motion to amend the complaint is pending does constitute an abuse of discretion. *Henderson v. Bush Bros. & Co.*, 868 S.W.2d 236, 238 (Tenn. 1993). But this is not the typical case. Mr. Cartwright had well over a year after the motion to dismiss to amend his original complaint. The motion he offered after the hearing on the motion to dismiss proposed an amended complaint similar to an amended complaint he proposed and then withdrew over a month prior to the hearing. The delay alone provided ample reason to deny Mr. Cartwright's motion to amend.

We also question whether the motions to amend that were filed after the hearing on the motion to dismiss were filed in good faith. In addition to seeking authority to file an amended complaint similar to one that he had offered and withdrawn before, Mr. Cartwright had a habit of amending or seeking amendments to his complaint on the eve of scheduled hearings on the Garners' motion to dismiss. So even if the amended

complaint was not futile, we conclude the trial court did not abuse its discretion in denying the motion to amend.

## B. GRANT OF THE MOTION TO DISMISS

Mr. Cartwright also argues that the trial court erred in dismissing his complaint as amended on any of the stated grounds. The court concluded that the motion to dismiss "should be granted on the basis that Plaintiff's claim is time-barred under the applicable statutes of limitation, and that the principles of claim preclusion, that is, res judicata, and issue preclusion, that is, collateral estoppel, each operate to bar this action." Because we conclude that it is dispositive, we focus our analysis on res judicata.

As a preliminary matter, we must consider whether the trial court's dismissal based on res judicata should be reviewed as a grant of a motion to dismiss pursuant to Rule 12 or as a grant of summary judgment pursuant to Rule 56. Tennessee Rule of Civil Procedure 12.02 provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Tenn. R. Civ. P. 12.02. The parties both argue that the court could consider the pleadings, orders, and opinions entered in the previous litigation without converting their motion to dismiss to a motion for summary judgment. We disagree.

Res judicata is an affirmative defense that must be included in an answer. Tenn. R. Civ. P. 8.03. Res judicata may be raised in the context of a motion to dismiss for failure to state a claim upon which relief can be granted but only in specific circumstances.

> For a Tenn. R. Civ. P. 12.02(6) motion to be used as a vehicle to assert an affirmative defense, the applicability of the defense must "clearly and unequivocally appear[] on the face of the complaint." In other words, the plaintiff's own allegations in the complaint must show that an affirmative defense exists and that this defense legally defeats the claim for relief.

*Jackson v. Smith*, 387 S.W.3d 486, 491-92 (Tenn. 2012) (internal citations omitted). Here, the complaint makes reference to the prior litigation, explaining that Mr. Cartwright "intended for matters of breach of fiduciary duty to be included in [*Cartwright II*], which is now on appeal from an adverse grant of summary judgment."

10

Under Tennessee law, a "judgment is not final and *res judicata* where an appeal is pending." *Creech v. Addington*, 281 S.W.3d 363, 377 (Tenn. 2009) (quoting *McBurney v. Aldrich*, 816 S.W.2d 30, 34 (Tenn. Ct. App. 1991)). Because the complaint alleged that the prior litigation was on appeal, we conclude the reference precluded res judicata from being raised in the context of a motion to dismiss for failure to state a claim.

When a motion to dismiss is converted to a motion for summary judgment, courts must use care not to violate the nonmoving party's right to both fair notice and a reasonable opportunity to "set forth specific facts showing that there is a genuine issue for trial." *See* Tenn. R. Civ. P. 56.06. In this case, the trial court had before it the submissions entered by the parties, which included pleadings, depositions, orders, opinions, and other filings entered in the previous litigation. The court also held a two-day hearing for the parties to argue extensively on the issues. Under the circumstances, Mr. Cartwright had both fair notice and a reasonable opportunity to show that there was a genuine issue of material fact as to the question of whether res judicata applied.

Having determined that the dismissal on res judicata grounds should be reviewed as a grant of summary judgment, our review is de novo with no presumption of correctness. *See City of Tullahoma v. Bedford Cty.*, 938 S.W.2d 408, 412 (Tenn. 1997). Because our inquiry involves purely a question of law, our task is confined to reviewing the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the non-moving party and resolve all factual inferences in the non-moving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998).

Res judicata "bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." *Jackson*, 387 S.W.3d at 491 (citing *Creech*, 281 S.W.3d at 376; *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995)). "[I]t promotes finality in litigation, prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits." *Id.* (citing *In re Estate of Boote*, 198 S.W.3d 699, 718 (Tenn. Ct. App. 2005); *Sweatt v. Tenn. Dep't of Corr.*, 88 S.W.3d 567, 570 (Tenn. Ct. App. 2002)). A party asserting res judicata as a defense must establish the presence of four elements:

> (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both

11

suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits.

*Id.* (citing *Lien v. Couch*, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998)).

There is no dispute that the underlying judgment in *Cartwright II* was rendered by a court of competent jurisdiction, that the same parties were involved in both suits, and that the underlying judgment was final and on the merits. Mr. Cartwright disputes whether the same claim or cause of action was asserted in both suits. Two suits are deemed to be the same cause of action for purposes of res judicata "where they arise out of the same transaction or a series of connected transactions." *Creech*, 281 S.W.3d at 380-81.

From our review, the same claims or causes of action were asserted in both suits. Mr. Cartwright previously made broad claims of breach of fiduciary duty against the Garners, including allegations that he had been deprived of assets as a trust beneficiary based on undue influence in the execution of certain amendments to his trust, one of which was executed in 1996. *See Cartwright I*, 2012 WL 1997803, at *4-5. Here, Mr. Cartwright's complaint as amended asserted that the Garners "intentionally refused to produce income or have withheld Alan C. Cartwright's trust fund income" based on "machinations done to his trust by the Defendants in 1996."

Mr. Cartwright argues, however, that the validity of the Alan Cook Cartwright 1996-1 Irrevocable Trust and the Alan Cook Cartwright 1996-2 Irrevocable Trust were not challenged in the prior action, only the validity of the amendments to the ACC Grantor Trust. But because of the nature of res judicata, such an argument is unavailing.

The doctrine of res judicata bars a litigant from asserting in a later lawsuit all issues "which were or could have been litigated" in the earlier lawsuit. *Gerber v. Holcomb*, 219 S.W.3d 914, 917 (Tenn. Ct. App. 2006) (quoting *Young v. Barrow*, 130 S.W.3d 59, 64 (Tenn. Ct. App. 2003)). Thus, a litigant is precluded from filing lawsuit after lawsuit against the same parties, or those in privity with those parties, when the underlying facts at issue are the same but the causes of action are changed, in an effort to find a court that will rule in the litigant's favor.

We conclude that the claims asserted in this action not specifically asserted in *Cartwright I* "could have been litigated" in the earlier lawsuit. Mr. Cartwright concedes that he "had been aware of the existence of the [Alan Cook Cartwright] 1996-1 Trust and the [Alan Cook Cartwright] 1996-2 Trust for some period of time." The second amendment to the ACC Grantor Trust, at issue in both *Cartwright I* and *Cartwright II*, was executed on the same day as the agreements to create the Alan Cook Cartwright 1996-1 Irrevocable Trust and the Alan Cook Cartwright ACC 1996-2 Irrevocable Trust.

12

In *Cartwright II*, we made note of that fact that Mr. Cartwright "did not argue that any other documents creating other trusts, such as the [Alan Cook Cartwright] 1996-1 and [the Alan Cook Cartwright] 1996-2 trusts, were void" even though those trusts were discussed during the hearing on the motion for summary judgment. *Cartwright II*, 478 S.W.3d at 618-19. Only following *Cartwright I* and remand did Mr. Cartwright "attempt to supplement the record . . . with documents pertaining to the [Alan Cook Cartwright] 1996-1 and [the Alan Cook Cartwright] 1996-2 trusts" to buttress his argument that the second amendment to the ACC Grantor Trust was procured by undue influence. *Id.* at 619 n.4.

Still Mr. Cartwright argues that some of his claims cannot be barred by res judicata because they arose after the judgment that was reviewed in *Cartwright I*. Specifically, he claims to have alleged "individual and discrete" breaches of trust that occurred each year from 2009 through 2014. Ignoring the paucity of factual allegations to support these claims, Mr. Cartwright's own pleadings undercut the premise that these claims were "discrete." The alleged breaches are all tied to the amendments to the ACC Grantor Trust. Mr. Cartwright claims "that he was inflicted with a long run aggregate shortfall by the machinations done to his trust by the Defendants in 1996."

We conclude that the complaint as amended was barred by res judicata. Thus we find it unnecessary to address the remaining grounds relied on by the trial court.

### C. REQUEST FOR ATTORNEY'S FEES AND COSTS ON APPEAL

The Garners seek an award of attorney's fees, costs, and expenses incurred on appeal under the statute for frivolous appeals or the statute for cases involving trust administration. *See* Tenn. Code Ann. § 27-1-122 (2017) (allowing a court to award "just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of" a frivolous appeal); Tenn. Code Ann. § 35-15-1004(a) (2015) (allowing a court to "award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy" in a "judicial proceeding involving" trust administration). The determination of whether a party is entitled to such an award on appeal is within the sound discretion of this Court. *See In re Estate of Goza*, No. W2013-00678-COA-R3-CV, 2014 WL 7235166, at *6 (Tenn. Ct. App. Dec. 19, 2014) (determining that an award under Tennessee Code Annotated § 35-15-1004(a) "is within the sound discretion of this Court"); *In re Nathaniel C.T.*, 447 S.W.3d 244, 248 (Tenn. Ct. App. 2014) (determining that an award under Tennessee Code Annotated § 27-1-122 is within this Court's discretion).

Under the circumstances of this case, we exercise our discretion to award reasonable attorney's fees, costs, and expenses incurred on appeal under the Tennessee Uniform Trust Code. The fees, costs, and expenses awarded are to be paid by

Mr. Cartwright personally. This case is remanded to the trial court for a determination of a reasonable award.

## III.

We affirm the trial court's dismissal of Mr. Cartwright's complaint as amended on the ground of res judicata. We remand the case for further proceedings as are necessary and consistent with this opinion.

_____

W. NEAL MCBRAYER, JUDGE

14