RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0188p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

KENNETH J. MYNATT,

*Plaintiff-Appellant*,

*v.*

UNITED STATES OF AMERICA; OFFICE OF LABOR
MANAGEMENT STANDARDS, U.S. DEPARTMENT OF
LABOR; TREASURY INSPECTOR GENERAL FOR TAX
ADMINISTRATION,

*Defendants-Appellees*.

No. 21-5932

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:20-cv-00151—William Lynn Campbell Jr., District Judge.

Argued:  June 8, 2022

Decided and Filed:  August 12, 2022

Before:  BOGGS, COLE, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Daniel A. Horwitz, HORWITZ LAW, PLLC, Nashville, Tennessee, for Appellant.
Sean R. Janda, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellees.  **ON BRIEF:**  Daniel A. Horwitz, Lindsay E. Smith, HORWITZ LAW, PLLC,
Nashville, Tennessee, for Appellant.  Sean R. Janda, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellees.

———————————

**OPINION**

———————————

GRIFFIN, Circuit Judge.

The Federal Tort Claims Act broadly waives sovereign immunity for tort claims against the United States, but also claws back that immunity in several instances by stating exceptions. We are called today to answer whether a federal employee's use of false testimony and forged documents to secure an indictment from a state grand jury falls within one of those exceptions, the so-called discretionary-function exception. *See* 28 U.S.C. §§ 1346(b)(1), 2680(a). If so, the government would be entitled to sovereign immunity and a district court would not have subject-matter jurisdiction over such a claim. But because we hold that it does not, the district court erred in dismissing plaintiff's complaint for lack of subject-matter jurisdiction. We therefore reverse and remand for further proceedings consistent with this opinion.

I.

The complaint asserts the following operative facts, which we must take as true at this procedural posture. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

Plaintiff Kenneth Mynatt is an Internal Revenue Service employee. Over a decade ago, he "blew the whistle to a member of the United States Congress about a wasteful IRS manager conference" and gave an interview to the Washington Post in which he was critical of his union president's leadership and more specifically, her "perceived abuse of power."

These two unrelated events did not sit well with other government employees and union members. Mynatt asserts that various federal employees formed a plan to retaliate against him— framing Mynatt for stealing funds from the union. The conspiracy's first step was for two separate employees to report his alleged theft to two federal entities, the Department of Labor's Office of Labor Management Standards and the Treasury Inspector General for Tax Administration. These reports triggered internal investigations, and government agents

ultimately "urged the filing and prosecution of federal felony charges" against him.  But the Department of Justice "determined the alleged crimes did not occur," and that the investigations "were political in nature," and declined to prosecute.

The co-conspirators then turned to Tennessee's criminal justice system, lobbying district attorneys from Tennessee's 20th Judicial District to pick up the cudgel.  Government agents presented "false testimony and forged documents" to prosecutors, doing so despite admitting that "they were being pressured by their respective management structures to have [Mynatt] indicted" and "the charges were political in nature and not based on provable facts."  The plan culminated with one special agent, Scott Kemp, testifying before a state grand jury "using false testimony and altered documents," which resulted in a two-count grand-jury indictment of Mynatt.  During the resulting criminal proceedings, government agents tried to "pressure [Mynatt] into pleading guilty to lesser unfounded misdemeanor charges" and "offer[ed] to drop all criminal charges if he resigned his employment with the Federal government."  The District Attorney ultimately dismissed the charges.

Plaintiff then filed several lawsuits against the United States, his union, and their employees.  *See generally Mynatt v. Nat'l Treasury Emps. Union Chapter 39*, No. 3:17-CV-01454, 2019 WL 7454711 (M.D. Tenn. June 10, 2019); *Mynatt v. Nat'l Treasury Emps. Union, Chapter 39*, No. M2020-01285-COA-R3-CV, 2021 WL 4438752 (Tenn. Ct. App. Sept. 28, 2021).  In this litigation, Mynatt claims that the United States[1] is liable for malicious prosecution and civil conspiracy under Tennessee law via the Federal Tort Claims Act (FTCA).  The government moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim.  The district court granted the motion, holding the FTCA did not authorize subject-matter jurisdiction over plaintiff's claims.[2]  Plaintiff appeals.

---

[1]As plaintiff concedes, defendant agencies—the Department of Labor's Office of Labor Management Standards and the Treasury Inspector General for Tax Administration—are not proper parties to the lawsuit because "[t]he FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee." *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990) (citing 28 U.S.C. § 2679(a)).  Given that the agencies did not raise this issue below or on appeal here, we leave it for the district court and the parties to address on remand.

[2]The district court suggested that it evaluated the government's motion to dismiss as one attacking the factual sufficiency of plaintiff's complaint instead of its claim of jurisdiction on its face.  *See, e.g., Golden v. Gorno*

## II.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Enacted in 1946, the FTCA "was designed primarily to remove the sovereign immunity of the United States from suits in tort." *Millbrook v. United States*, 569 U.S. 50, 52 (2013) (citation omitted). It waives sovereign immunity for claims of "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the [United States] while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The waiver grants exclusive jurisdiction to the district courts to hear such claims, provided, however, that "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.*

The FTCA contains several exceptions to this broad waiver of sovereign immunity. Because the Act is a grant of jurisdiction, a court lacks subject-matter jurisdiction to adjudicate claims falling within exceptions to that grant. *Milligan v. United States*, 670 F.3d 686, 692 (6th Cir. 2012). Although courts generally must strictly construe a waiver of sovereign immunity "in favor of the sovereign, . . . this principle is unhelpful in the FTCA context, where unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute, which waives the Government's immunity from suit in sweeping language." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 491–92 (2006) (internal quotation marks and citations omitted). Instead, "the proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify those circumstances which are within the words and reason of the exception—no less and no more." *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984) (internal quotation marks omitted).

---

*Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). Yet the district court did not make any factual findings deciding the jurisdictional challenge, which means the facial-attack standard applies. *Kohl v. United States*, 699 F.3d 935, 939 n.1 (6th Cir. 2012). Under this rubric, we accept the facts in the complaint as true and then test whether those facts sufficiently invoke federal jurisdiction. *Gentek*, 491 F.3d at 330.

We address today § 2680(a), commonly known as the discretionary-function exception. *See, e.g.*, *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997). It generally retains sovereign immunity for claims relating to the discretionary aspects of a federal employee's conduct.[3] In dismissing plaintiff's complaint, the district court found that plaintiff's allegations of governmental misconduct fell within this exception. We review this conclusion de novo. *Larry E. Parrish. P.C. v. Bennett*, 989 F.3d 452, 455 (6th Cir. 2021).

III.

The discretionary-function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). This exception focuses on "the nature of the conduct, rather than the status of the actor." *Id.* at 813. Section 2680(a) thus removes from the FTCA's sovereign-immunity waiver

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The Supreme Court has established a two-part test for courts to evaluate this exception's application. We "must first consider whether the action is a matter of choice for the acting employee." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). And even if so,

---

[3]The parties also focus on § 2680(h). That "law enforcement proviso" waives sovereign immunity for "claims for six [specific] intentional torts . . . that are based on the 'acts or omissions of investigative or law enforcement officers.'" *Millbrook*, 569 U.S. at 52–53 (quoting 28 U.S.C. § 2680(h)). Because, as will be explained, subject-matter jurisdiction is secure, we do not address the other main issue presented by today's appeal—whether the law-enforcement proviso expressly overrides the discretionary-function exception. That issue is the subject of a lopsided circuit split, with most concluding that the provisions can be read harmoniously—i.e., that the law-enforcement proviso does not trump the discretionary-function exception. *See Joiner v. United States*, 955 F.3d 399, 406 (5th Cir. 2020) (collecting cases). Only the Eleventh Circuit sees it differently. *See Nguyen v. United States*, 556 F.3d 1244, 1250–57 (11th Cir. 2009) ("[I]f a claim is one of those listed in the proviso to subsection (h), there is no need to determine if the acts giving rise to it involve a discretionary function."). We have previously declined to pick a side, *see Milligan*, 670 F.3d at 695 n.2, and given our conclusion that the district court had subject-matter jurisdiction, we take the same approach here.

the exception only applies if that choice in judgment "is of the kind that the discretionary function exception was designed to shield." *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991) (citation omitted). In other words, the government is entitled to sovereign immunity only if the complained-of actions are *both* discretionary and of the type the exception was designed to protect. If the actions are either non-discretionary *or* discretionary but unprotected, the government is not entitled to sovereign immunity.

We turn to the application of this test next, taking the two parts in turn.

A.

True to its name, the discretionary-function exception only protects acts of discretion. *Berkovitz*, 486 U.S. at 536. If there is "room for judgment or choice in the decision made," the complained-of conduct is discretionary. *Kohl*, 699 F.3d at 940. But if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, . . . the employee has no rightful option but to adhere to the directive," his conduct cannot be deemed discretionary, and the exception does not apply. *Berkovitz*, 486 U.S. at 536.

Mynatt finds two faults with the district court's holding that the actions here were discretionary. First, he takes issue with the district court's defining broadly the scope of conduct about which he complains when it concluded that "the challenged conduct at the heart of Plaintiff's complaint is the investigation undertaken by [government] agents and their recommendations to the District Attorney." "[D]etermin[ing] exactly what conduct is at issue and identif[ying] which specific policies or regulations the plaintiff alleges were violated" is paramount. *Milligan*, 670 F.3d at 693 (internal quotation marks and citation omitted). We agree with Mynatt that the district court framed the issue incorrectly and erred at this "crucial first step." *Id.*

To be sure, plaintiff's complaint focuses on various aspects of the government employees' investigations. But Mynatt concedes that the government agents' investigations and recommendations were neither "non-discretionary" nor "even objectionable" for purposes of the discretionary-function exception. Nor could he argue otherwise—"discretionary decisions made during police investigations . . . are within the scope of conduct the discretionary function

exception is intended to protect" because investigations "often involve difficult considerations such as the desire to keep the investigation secret, allocation of police resources, and the urgency of criminal investigations." *Id.* at 694–95. The focal point, rather, of Mynatt's claim is that false documents and perjured testimony before the grand jury secured his indictment. Complaint paragraph 9(e) makes this clear:

> During the initial meeting [with state prosecutors], false testimony and forged documents previously generated by [a union bookkeeper] and Kemp were presented to [state prosecutors], ADA Milam and Mitchell. At a second meeting . . . , [another government agent] and Kemp admitted to Mitchell they were being pressured by their respective management structures to have [Mynatt] indicted regardless of the facts. [They] admitted to Mitchell the charges were political in nature and not based on provable facts, but they insisted [Mynatt] would have little or no representation and would likely plead guilty if Mitchell assisted them in overcharging and indicting [Mynatt]. . . . On March 14, 2014, Mitchell allowed Kemp, who had the blessing of his . . . managers . . . to testify before a state grand jury and successfully had plaintiff indicted for two state felonies. As previously agreed between the conspirators, Kemp signed the indictment as the prosecutor. The subsequent arrest of plaintiff was the result of a grand jury indictment obtained by Kemp by knowingly using false testimony and altered documents.

(Capitalization omitted and emphasis added). With this paragraph and plaintiff's concession, the proper framing of the conduct at issue is whether federal law, policies, or regulations dictated whether a government agent may present false evidence (in testimonial or documentary form) to a prosecutor and then to a grand jury. *See Rosebush*, 119 F.3d at 442. The district court erred when it framed the issue more broadly.

Second, Mynatt contends the district court erroneously held that the government agents acted without discretion, citing several sources of authority that he says prohibited them from exercising judgment. We have no occasion to pass on whether these generally applicable authorities—which range from state and federal statutes regulating perjury and the presentation of false evidence, to Tennessee's malicious-prosecution tort, to the Fourth Amendment's prohibition against prosecutions without probable cause[4]—"specifically prescribe[] a course of

---

[4]We note that our sister circuits are divided as to whether constitutional misconduct renders a government agent's conduct non-discretionary for purposes of the discretionary-function exception. *Compare Shivers v. United States*, 1 F.4th 924, 933 (11th Cir. 2021) ("[An] FTCA tort claim based on the government's tortious abuse of that function—even unconstitutional tortious abuse—is barred by the statutory discretion function exception"), *and*

action for an employee to follow." *Berkovitz*, 486 U.S. at 536. Mynatt forfeited this argument by failing to raise it below. *See Potter v. Comm'r of Soc. Sec.*, 9 F.4th 369, 381 (6th Cir. 2021). And even if he did not, whether they so govern federal employees' conduct is not, as set forth next, outcome-determinative. We therefore assume without deciding that the conduct at issue here was discretionary.

B.

Just because an act is discretionary does not mean it automatically falls within the discretionary-function exception. Section 2680(a) "protects only governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323 (citation omitted). This, the Supreme Court has held, is based on the exception's purpose: "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* (internal quotation marks and citations omitted). Accordingly, even if an employee's conduct involved a choice in judgment, the exception applies only if "that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 322–23 (citation omitted).

When examining this factor, we focus "not on the agent's subjective intent in exercising the discretion, . . . but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325; *see also A.O. Smith Corp. v. United States*, 774 F.3d 359, 370 (6th Cir. 2014) (holding that an "actual policy analysis need not have been conducted" for the exception to apply; rather, the nature of the conduct "must only be 'susceptible to policy analysis'" (quoting *Gaubert*, 499 U.S. at 325)). Stated another way, if there is a reason for the conduct to require a balancing of interests, it falls within the exception. *See Sharp ex rel. Estate of Sharp v. United States*, 401 F.3d 440, 445 (6th Cir. 2005); *see also Edwards v. Tenn. Valley Auth.*, 255 F.3d 318, 325 (6th Cir. 2001).

---

*Linder v. United States*, 937 F.3d 1087, 1090 (7th Cir. 2019) (similar), *with Loumiet v. United States*, 828 F.3d 935, 944 (D.C. Cir. 2016) ("The discretionary-function exception likewise does not shield decisions that exceed constitutional bounds, even if such decisions are imbued with policy considerations."), *Limone v. United States*, 579 F.3d 79, 102 (1st Cir. 2009) (similar), *Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003) (per curiam) (similar), *and Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) (similar).

"[T]here is a line between conduct of the kind that the discretionary function exception was designed to shield, and the sorts of run-of-the-mill torts, which, while tangentially related to some government program, are not sufficiently grounded in regulatory policy so as to be shielded from liability." *Kohl*, 699 F.3d at 943 (citations and internal quotation marks omitted); *see also Dalehite v. United States*, 346 U.S. 15, 28 (1953). As an example of the latter, we have pointed to *Gaubert*'s discussion of "negligent driving by a government actor on government business as an example of conduct that would not be shielded by the discretionary-function exception. Driving a car, while it 'requires the constant exercise of discretion,' is not sufficiently connected to regulatory policy to fall within the discretionary-function exception." *Kohl*, 699 F.3d at 943 (quoting *Gaubert*, 499 U.S. at 325 n.7).

The question here is whether presenting false evidence (in testimonial or documentary form) to a prosecutor and then to a grand jury is the type of conduct "that the discretionary function exception was designed to shield." *Id.* (citation omitted). The answer here is plainly no. As the Seventh Circuit ably noted in *Reynolds v. United States*, there is a distinction between "challenges to the quality of an investigation or prosecution" and allegations that a government agent "fueled [a] prosecution with knowingly false information." 549 F.3d 1108, 1113 (7th Cir. 2008). Mynatt's complaint here challenges not "the discretionary decision to prosecute," but rather "[a] federal investigator's decision to lie under oath." *Id.* These are distinct choices, and with respect to the latter, "[t]here can be no argument that perjury is the sort of legislative or administrative decision grounded in social, economic, and political policy that Congress sought to shield from second-guessing." *Id.* at 1113–14 (internal quotation marks, brackets, and citation omitted). The Seventh Circuit's apt conclusion here does not stand alone. *See, e.g.*, *Selvam v. United States*, No. 20-CV-3299, 2021 WL 5149809, at *9–10 (E.D.N.Y. Nov. 5, 2021); *Paret-Ruiz v. United States*, 943 F. Supp. 2d 285, 290–91 (D.P.R. 2013); *Camacho v. Cannella*, No. EP-12-CV-40-KC, 2012 WL 3719749, at *10 (W.D. Tex. Aug. 27, 2012); *Westerfield v. United States*, No. 1:07 CV 3518, 2012 WL 13157860, at *4–5 (N.D. Ohio Aug. 3, 2012); *Chandler v. United States*, 875 F. Supp. 1250, 1265–66 (N.D. Tex. 1994); *Crow v. United States*, 634 F. Supp. 1085, 1089–90 (D. Kan. 1986).

The government articulated just one substantive reason that we should not follow the Seventh Circuit's lead. Relying on *Gray v. Bell*, 712 F.2d 490 (D.C. Cir. 1983), it maintains there is no room between the discretion we afford to the prosecutorial process and what is alleged to have occurred here. But *Gray* involved challenges to *prosecutors'* underlying decisions and conduct—and not, as here, a federal investigator's behavior—which the D.C. Circuit found "too intertwined with purely discretionary decisions of the prosecutors to be sufficiently separated from the initial decision to prosecute." *Id.* at 515–16. On that ground, as did the Seventh Circuit in *Reynolds*, we find *Gray* factually distinguishable. *See Reynolds*, 549 F.3d at 1113.

Lacking a substantive justification for its position, the government reverts to some procedural defenses. First, it suggested at oral argument that we find Mynatt's position forfeited. Although the substance of plaintiff's briefing on the "designed to shield" factor is less than ideal, the government's briefing did not bring a forfeiture argument on this issue, rendering that position, itself, forfeited. *See, e.g.*, *United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017); *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331 (6th Cir. 2009). And second, the government asserted in its appellate brief (as it did below) that Mynatt's complaint did not plausibly allege a cause of action. That issue is not before us. We consider today only whether jurisdiction can be inferred from the facts set forth in Mynatt's complaint, *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 620 (6th Cir. 2010), and as set forth above, it can be. We leave it for the district court to resolve in the first instance the government's other asserted grounds for dismissal.

Accordingly, the district court had subject-matter jurisdiction over Mynatt's claims.

IV.

For these reasons, we reverse the district court's judgment, and remand for further proceedings consistent with this opinion.