NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0521n.06

No. 23-5195

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 13, 2023
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| KUSH MUHAMMAD,<br><br>    Plaintiff,<br><br>PRAYLON BREED,<br><br>    Intervenor-Plaintiff-Appellant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant-Appellee,<br><br>DARRYL ANTHONY ROBINSON,<br><br>    Defendant. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY<br><br><br>OPINION |

---

Before: BATCHELDER, GRIFFIN, and LARSEN, Circuit Judges.

GRIFFIN, Circuit Judge.

Praylon Breed was injured in a car crash as a bystander during a deputy U.S. Marshal's high-speed pursuit of a fugitive and sued the deputy for his injuries. The United States—after substituting as the proper defendant—moved to dismiss, arguing it was entitled to sovereign immunity because the deputy made a discretionary decision to conduct the high-speed chase. The district court agreed, granting the government's motion to dismiss. We affirm.

I.

In December 2012, defendant Darryl Robinson committed two armed robberies and injured a police officer in his attempt to evade arrest. He was convicted in Kentucky state court and served

prison sentences for robbery, burglary, being a felon in possession of a firearm, fleeing or evading police, and assault; Robinson was paroled in September 2018. Three months later, he absconded from parole.

Law enforcement found Robinson two years later when United States Marshals Service special deputy Joshua Spaulding and his team received a tip about Robinson's location. After locating Robinson, Spaulding "attempted a traffic stop" by pulling up behind Robinson on the street and turning on his emergency lights and siren. Robinson turned down another street "and within one block, he accelerated to an illegal speed for the area." Soon thereafter, Robinson crashed his car into a car Praylon Breed and Kush Muhammad were in, "nearly killing" them.

Muhammad sued Spaulding and Robinson in state court for negligence and gross negligence, alleging that Spaulding initiated a high-speed pursuit with Robinson and did not stop the pursuit before the crash. After certifying that Spaulding was acting within the scope of his federal employment at the time of the incident, the United States removed the case to federal court on the ground that Muhammad's claim against Spaulding fell under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., and that the United States—not Spaulding—was the proper defendant.

Once Muhammad's case was in federal court, Breed intervened and filed a complaint of his own that was substantively identical to Muhammad's. The United States moved to dismiss the complaints under Federal Rule of Civil Procedure 12(b)(1), arguing that it has sovereign immunity because Spaulding made a discretionary decision to pursue Robinson based on the Marshals Service's vehicle-pursuit policy. Breed and Muhammad responded, arguing that Spaulding did not make a discretionary decision and that the policy prohibited him from initiating the pursuit. The district court agreed with the government, concluding that sovereign immunity barred the suits because Spaulding made a discretionary decision to pursue Robinson. Only Breed appealed.

II.

"We review *de novo* the district court's decision to dismiss this case for lack of subject matter jurisdiction under Rule 12(b)(1)." *Lindke v. Tomlinson*, 31 F.4th 487, 490 (6th Cir. 2022) (quotation marks omitted). Motions to dismiss under Rule 12(b)(1) come in two forms: facial attacks and factual attacks. *Id*. at n.1. "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). In contrast, "[a] factual attack challenges the factual existence of subject matter jurisdiction." *Id.* When deciding a factual attack, "a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759–60. That said, "when the parties raise a 'factual' challenge by submitting exhibits relating to subject-matter jurisdiction, we give deference to the district court only to the extent the district court actually made factual findings." *Lovely v. United States*, 570 F.3d 778, 782 (6th Cir. 2009).

The government factually attacked the complaints, requesting that the district court consider facts outside the complaint when ruling on its motion to dismiss. So, "[t]o the extent that the district court made factual findings in making its determinations, we review those findings for clear error while reviewing the application of the law to those facts *de novo*." *Lindke*, 31 F.4th at 490 (citation omitted). Faced with this attack, "[p]laintiff bears the burden of establishing that subject matter jurisdiction exists." *Cartwright*, 751 F.3d at 760.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The Federal Tort Claims Act broadly

waived the United States' sovereign immunity from suit for tort claims, subject to several exceptions. *Mynatt v. United States*, 45 F.4th 889, 894–95 (6th Cir. 2022). Relevant here is the discretionary-function exception, 28 U.S.C. § 2680(a), which "retains sovereign immunity for claims relating to the discretionary aspects of a federal employee's conduct," *Mynatt*, 45 F.4th at 895. Under this exception, "the government is entitled to sovereign immunity only if the complained-of actions are *both* discretionary and of the type the exception was designed to protect. If the actions are either non-discretionary *or* discretionary but unprotected, the government is not entitled to sovereign immunity." *Id.* at 896. Breed focuses his argument on the first element: whether Spaulding's actions were discretionary.

An act is discretionary "[i]f there is room for judgment or choice in the decision made." *Id.* (internal quotation marks omitted). In contrast, "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, . . . the employee has no rightful option but to adhere to the directive, his conduct cannot be deemed discretionary, and the exception does not apply." *Id.* (alteration in original) (internal quotation marks omitted).

Breed focuses on two portions of the Marshals Service's vehicle pursuit policy: pursuit circumstances and pursuit-initiation criteria. The pursuit-initiation criteria require a deputy marshal to "reasonably believe[] the driver and/or an occupant has committed or is about to commit a crime involving serious injury or death" before initiating a high-speed chase. Meanwhile, the "Pursuit Circumstances" section lists several factors that a deputy "must" consider "[b]efore engaging in any vehicle pursuit or deciding to continue a pursuit." Such mandatory language leaves no room for discretion, so Spaulding was required to consider these factors for the discretionary-function exception to apply. *See id.*; *Abbott v. United States*, 78 F.4th 887, 901 (6th Cir. 2023) (holding that government officials are not shielded by the discretionary-function

exception if they fail to conduct an antecedent assessment required by relevant policy). The government submitted two affidavits by Spaulding addressing his pursuit of Robinson and his general approach to high-speed chases to demonstrate compliance with these requirements.

Breed generally argues in his appellate brief that Spaulding's actions did not satisfy the pursuit policy's requirements. He claims that Spaulding's affidavit did not evince his belief that Robinson had committed or was about to commit a crime involving serious injury or death. His brief, however, appears to generically reference only Spaulding's first affidavit (although it specifically cites neither). Because Breed's brief fails to specify which portions of the affidavits were deficient, it arguably does not comply with Federal Rules of Appellate Procedure 28(a)(6) and (8), which required Breed to include "appropriate references to the record" in his brief. *See generally cf. Knight Cap. Partners Corp. v. Henkel AG & Co. KGaA*, 930 F.3d 775, 780 n.1 (6th Cir. 2019) (recounting the apt saying that "judges are not like pigs, hunting for truffles that might be buried in the record" (internal quotation marks and brackets omitted)). But even overlooking that error, Breed's counsel abandoned this claim at oral argument. When asked how the affidavits were deficient, Breed's counsel argued that Spaulding did not comply with the pursuit policy because he did not properly use his emergency lights and siren during the pursuit. That argument, however, was not in his appellate brief, so we need not consider it. *See, e.g.*, *Henricks v. Pickaway Corr. Inst.*, 782 F.3d 744, 751 n.3 (6th Cir. 2015) ("Because this argument was raised on appeal for the first time at oral argument, it has been forfeited on appeal."). In any event, Spaulding averred that he used his lights and siren when he initiated the pursuit. Thus, the single purported deficiency Breed identified in Spaulding's affidavits does not establish that Spaulding violated the pursuit policy.

Breed contends that Robinson had not committed and was not about to commit a qualifying crime that would allow Spaulding to initiate the pursuit. Breed focuses this argument on whether Robinson's absconding crime is one "involving serious injury or death." Furthermore, Breed's argument ignores Robinson's convictions for violent crimes that involved a firearm. Because Breed has not challenged those convictions, he cannot meet his burden to show that Spaulding violated the pursuit policy. *See Cartwright*, 751 F.3d at 760.

Breed's argument about the "Pursuit Circumstances" fares no better. As discussed, the policy lists several factors a deputy must consider when deciding whether to conduct a high-speed chase. Breed argues that "there has been no showing which would suggest Spaulding ever considering [sic] the policy mandates to begin with." Not so. Spaulding's second affidavit states that he considers the pursuit factors before engaging in any pursuit. Breed's failure to address that affidavit is fatal to his pursuit-circumstances argument. As for Spaulding's decision after weighing the factors, that was clearly discretionary because "there is room for judgment or choice in the decision made." *See Mynatt*, 45 F.4th at 896 (internal quotation marks omitted). So Breed has not met his burden on this point either.

Finally, Breed also generally argues that public policy weighs against applying the discretionary-function exception here. But he makes that argument for the first time on appeal, so it is forfeited. *See, e.g.*, *Greer v. United States*, 938 F.3d 766, 770 (6th Cir. 2019) ("When a party neglects to advance a particular issue in the lower court, we consider that issue forfeited on appeal."). Consequently, we will not consider this argument. Nor will we consider the argument Breed made for the first time on appeal at oral argument that Kentucky law made Spaulding's actions nondiscretionary. *See, e.g.*, *Henricks*, 782 F.3d at 751 n.3.

III.

For the reasons stated, we affirm the district court's judgment.